**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| THOMAS RATCLIFFE, MARK GILONI, JOHN HALEBIAN AND DAVID FIX, Individually and on Behalf of All Others, Similarly Situated, Plaintiffs, vs. A.T. CROSS CO., et al., Defendants. | CIVIL ACTION NO. 00 203 ML |

**CLASS PLAINTIFFS' MOTION FOR**
**APPROVAL OF THE PROPOSED SETTLEMENT**

For the reasons set forth in the accompanying Memorandum of Law, plaintiffs, by their counsel, hereby move for approval of the proposed settlement reflected in Stipulation and Agreement of Settlement.

Respectfully submitted,

Matthew F. Medeiros /GHR

Matthew F. Medeiros, Esquire (#1856)
**LITTLE, MEDEIROS, KINDER, BULMAN & WHITNEY, P.C.**
72 Pine Street
Providence, RI 02903
Tel.: (401) 272-8080
Fax: (401) 272-8195
**Liaison Counsel for The Class**

**LEAD COUNSEL:**
**BERGER & MONTAGUE, P.C.**
Lawrence Deutsch, Esquire
Elizabeth W. Fox, Esquire
Shannon Carson, Esquire
1622 Locust Street
Philadelphia, PA 19103
Tel.: (215) 875-3000
Fax: (215) 875-4604

**CERTIFICATE OF SERVICE**

I hereby certify that on this 30th day of August, 2005, I caused to be served by regular U.S. mail a copy of the within Class Plaintiffs' Motion and Memorandum of Law in Support of the Proposed Settlement to: Gregory L. Benik, Esq., Robin L. Main, Esq., Holland & Knight LLP, One Financial Plaza, Suite 1800, Providence, RI 02903-2477 and John F. Sylvia, Esq., Adam L. Sisitsky, Esq., Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C., One Financial Center Boston, MA 02111.

Veronica Szuc

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| THOMAS RATCLIFFE, MARK GILONI, JOHN HALEBIAN AND DAVID FIX, Individually and on Behalf of All Others, Similarly Situated, Plaintiffs, | : | CIVIL ACTION NO. 00 203 ML |
| vs. | : | |
| A.T. CROSS CO., et al., Defendants. | : | |

**CLASS PLAINTIFFS' MEMORANDUM OF LAW**
**IN SUPPORT OF THE PROPOSED SETTLEMENT**

Matthew F. Medeiros, Esquire (#1856)
**LITTLE, MEDEIROS, KINDER, BULMAN & WHITNEY, P.C.**
72 Pine Street
Providence, RI 02903
Tel.: (401) 272-8080
Fax: (401) 272-8195
**Liaison Counsel**

**BERGER & MONTAGUE, P.C.**
Lawrence Deutsch, Esquire
Elizabeth W. Fox, Esquire
Shanon J. Carson, Esquire
1622 Locust Street
Philadelphia, PA 19103
Tel.: (215) 875-3062
Fax: (215) 875-4674
**Lead Counsel**

**TABLE OF CONTENTS**


I. **SUMMARY OF SETTLEMENT** ....1

A. **Claims Against the Defendants by the Class** ....1

B. **Procedural History** ....2

II. **THE STANDARDS FOR JUDICIAL APPROVAL OF CLASS ACTION SETTLEMENTS UNDER FED. R. CIV. P. 23** ....3

III. **CONSIDERATION OF THE RELEVANT FACTORS IN EVALUATING THE SETTLEMENT OF THIS ACTION** ....4

1. **The Stage Of The Proceedings and the Amount of Discovery Completed** ....4

2. **The Favorable Reaction of the Class** ....5

3. **The Complexity and Likely Duration of this Litigation** ....6

4. **The Amount of Settlement In Light of the Risks of Litigation** ....6

5. **Potentially Significant Obstacles to Recovery** ....8

6. **Whether Settlement Was After Arms Length Negotiations and the Opinion of Qualified Counsel** ....8

IV. **CONCLUSION** ....10

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) .......... 6

*Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990) .......... 6

*Bussie v. Allmerica Finance Corp.*, 50 F. Supp. 2d, 59 (D.Mass. 1999) .......... 4

*City Partnership Co. v. Atlantic Acquisition Ltd. Partnership*, 100 F.3d 1041 (1st Cir. 1996) .......... 3, 4, 8

*In re Corrugated Container Antitrust Litigation*, 643 F.2d 195 (5th Cir. 1981) .......... 4

*Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977) .......... 9

*Dura Pharmaceuticals, Inc. V. Broudo*, 125 S. Ct. 1627 (U.S. 2005) .......... 7

*Durrett v. Housing Authority of Providence*, 896 F.2d 600 (1st Cir. 1990) .......... 3, 5

*In re First Commodity Corp of Boston Customer Accounts Litigation*, 119 F.R.D. 301 (D.Mass. 1987) .......... 6, 9

*In re Fleet/Norstar Securities Litigation*, 935 F. Supp. 99 (D.R.I., 1996) .......... 4

*Florida Trailer & Equip. Co. v. Deal*, 284 F.2d 567 (5th Cir. 1960) .......... 6

*M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819 (D. Mass. 1987) .......... 4

*Maher v. Zapata Corp.*, 714 F.2d 436 (5th Cir. 1983) .......... 7

*Mathewson Corp. v. Allied Marine Industries, Inc.*, 827 F.2d 850 (1st Cir. 1987) .......... 6

*Newman v. Stein*, 464 F.2d 689 (2nd Cir. 1972) .......... 7

*Rolland v. Cellucci*, 191 F.R.D. 3 (D.Mass. 2000) .......... 4

*Schwartz v. Novo Industri A/S*, 119 F.R.D. 359 (S.D.N.Y. 1988) .......... 5

*United States v. DiBiase*, 45 F.3d 541 (1st Cir. 1995) .......... 6

*In re Warner Communications Sec. Litigation*, 618 F. Supp. 735 (S.D.N.Y. 1985) .......... 7

*Weinberger v. Kendrick*, 698 F.2d 61 (2nd Cir., 1982) .......... 9

*Zerkle v. Cleveland-Cliffs Iron Co.*, 52 F.R.D. 151 (S.D.N.Y. 1971) .......... 6

### FEDERAL STATUTES

15 U.S.C. § 78u-4(a)(7) .......... 5

# I. SUMMARY OF SETTLEMENT

The Class Plaintiffs submit this memorandum in support of the proposed Settlement of this action (the "Litigation") between the Class Plaintiffs ("the Plaintiffs") and the Defendants on behalf of all persons who purchased A.T. Cross ("A.T. Cross") stock from July 16, 1998 through and including April 22, 1999 (the "Class Period") and sustained a loss.

The proposed settlement in this Litigation totals $1,500,000 in cash, plus interest (the "Settlement Fund"). The Settlement is the result of five years of vigorous prosecution by Plaintiffs' counsel in which every issue was hard fought. Settlement was achieved only after exhaustive litigation: rulings on defendants' motion to dismiss, appeal to the First Circuit, complete merits and expert discovery, class discovery and certification, ruling on defendants' summary judgment motion, full trial preparation, and lengthy settlement negotiations (including two initial mediations and a final mediation session with Magistrate Judge Lovegreen).

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure and the Stipulation and Agreement of Settlement, the Class Plaintiffs submit that the proposed settlement is fair, reasonable, adequate, and in the best interests of the Class.

## A. Claims Against the Defendants by the Class

The core claim is that A.T. Cross misrepresented its reported financial results for sales of its Pen Computing Group ("PCG") and its CrossPad sales and committed federal securities law violations under Section 10b and 20(a) of the Securities Exchange Act of 1934. The defendants are A.T. Cross Corporation ("A.T. Cross"), Bradford R. Boss (Chairman), W. Russell Boss (CEO), John E. Buckley (COO), and John T. Ruggieri (CFO). The revised class period begins with the company's July 16, 1998 financial statements that included PCG's reported results for the second

quarter of 1998. [1] Plaintiffs claim that A.T. Cross's booking of PCG sales violated Generally Accepted Accounting Procedures ("GAAP") because the sales had contingent terms that were not properly disclosed or accounted for. The claims are based upon sales agreements that granted price protection and guaranteed rights of return to A.T. Cross's customers. Plaintiffs also argued that A.T. Cross had planned during 1998 to lower its PCG product prices in1999, thereby requiring price protection credit.

On an April 22, 1999 on a conference call with investors and analysts, the defendants reported that PCG sales had fallen from $9 million in the 4th quarter of 1998 to $1 million for the 1st quarter of 1999. The defendant directors and executives mentioned "takebacks" and "price protection" they had issued to the PCG's customers that had negatively impacted the reported sales in the 1st quarter of 1999.

Damages claimed by plaintiffs were derived from the fall in A.T. Cross's share price during the class period - - - the price of shares of A.T. Cross had risen to $12.00 by July 1998, the beginning of the class period, and then had fallen to $5 by the end of the class period.

**B. <u>Procedural History</u>**

Plaintiffs filed suit on April 21, 2000 for a class period encompassing September 17, 1997 through April 22, 1999. The Court dismissed plaintiffs' complaint on June 4, 2001. Plaintiffs appealed to the First Circuit. The First Circuit reversed and upheld the claims against the remaining defendants on March 20, 2002. After the First Circuit's ruling, both sides litigated the case vigorously.

Plaintiffs deposed 11 fact witnesses, conducted depositions of four experts, conducted six class depositions; subpoenaed 33 third parties for documents; moved to compel discovery on five

---

1 The original class period covered September 17, 1997 through April 22, 1999 and included claims concerning misrepresentations about accounting as well as statements concerning sales and profitability for 1998.

occasions; reviewed approximately 100,000 pages of documents; and moved for class certification (that was initially granted on April 17, 2003).

Defendants filed a motion for summary judgment on August 29, 2003 that the Court decided on July 21, 2004. Plaintiffs moved for reconsideration on July 30, 2004 but the court denied that motion on August 18, 2004. The Court's summary judgment ruling shortened the class period and eliminated standing for the original plaintiffs, Michael and Barbara Aldridge. Therefore, defendants filed a supplemental motion for summary judgment on August 4, 2004. Plaintiffs opposed this motion and moved for permission to give notice to the class to provide a new class representative. As a consequence, a notice was ultimately sent to all class members who might qualify as class representatives. Subsequently Messrs. Ratcliffe, Giloni, Halebian and Fix came forward, were subject to full discovery by defendants and were certified as new class representatives via the Court's Order on April 1, 2005.

## II. THE STANDARDS FOR JUDICIAL APPROVAL OF CLASS ACTION SETTLEMENTS UNDER FED. R. CIV. P. 23

The standards to determine whether to approve settlements of class actions favor approval of the Settlement here. Courts favor the settlement of disputed claims. Durrett v. Housing Auth. of Providence, 896 F.2d 600, 604 (1st Cir. 1990). In deciding whether to approve a proposed settlement of a class action, the Court must find that the settlement is fair, reasonable and adequate. City Partnership Co. v. Atlantic Acquisition Ltd. Partnership, 100 F.3d 1041, 1043 (1st Cir. 1996);

Judicial evaluation of a proposed settlement of a class action involves a limited inquiry into whether the possible risks of litigation with its costs are outweighed by the benefits of the settlement. Courts in this Circuit have held that a presumption in favor of settlement is to be found "[W]hen sufficient discovery has been provided and the parties have bargained at arms-length." City P'ship, 100 F.3d at 1043. The relevant factors courts in this Circuit consider in evaluating the

fairness of a class action settlement include:(1) the stage of the proceedings and the amount of discovery completed; (2) the favorable reaction of the class to the proposed settlement; (3) the complexity and likely duration of the litigation; (4) the amount of the settlement in light of the risks of litigation; (5) the potentially significant obstacles to a recovery; and (6) whether the settlement was reached after arm's length negotiations and the opinion of the qualified counsel. See e.g. Bussie v. Allmerica Finance Corp., 50 F. Supp. 2d, 59, 76 (D.Mass. 1999); In re Fleet/Norstar Securities Litigation, 935 F. Supp. 99, 105 (D.R.I., 1996). M. Berenson Co. v. Faneuil Hall Marketplace, Inc., 671 F. Supp. 819, 822-23 (D. Mass. 1987).

## III. CONSIDERATION OF THE RELEVANT FACTORS IN EVALUATING THE SETTLEMENT OF THIS ACTION

### 1. The Stage Of The Proceedings and the Amount of Discovery Completed

This "fairness" factor looks at whether sufficient discovery had been completed for both sides to understand the strengths and weaknesses of their respective cases. Rolland v. Cellucci, 191 F.R.D. 3,8 (D.Mass. 2000), aff'd 318 F.3d 42 (1st Cir. 2003) (finding discovery to be sufficient given that the parties had a voluminous amount of information at the time as well as the advice and reports of their experts).

Consideration of the stage of the proceedings and amount of discovery ensures that the factual record supports an informed judgment as to the adequacy of the settlement proposal. City P'ship, 100 F.3d at 1043. When sufficient discovery has been provided and the parties have bargained at arms length, there is a presumption in favor of the settlement. See also In re Corrugated Container Antitrust Litig., 643 F.2d 195, 211 (5th Cir. 1981).

The factual investigation of Class Counsel here is more than sufficient to support an informed judgment regarding the fairness of the proposed Settlement. The parties engaged in substantial fact and expert discovery and briefed the material issues likely to arise at trial. See

Exhibit 1, Declaration of Lawrence Deutsch in Support of Settlement, Attorneys' Fees and Costs. This case was fully litigated and ready to go to trial. In short, all parties knew as much as they could possibly know about the merits and risks of the case.

**2. The Favorable Reaction of the Class**

Pursuant to the Stipulation and Agreement of Settlement and this Court's Order for Notice and Hearing of July 20, 2005, Plaintiffs' Class Counsel (also referred to as "Class Counsel") sent Class members the Notice of Pendency of Class Action, Settlement and Settlement Hearing ("Notice"). As evidenced by the Affidavit of Mailing and Publication, notice of this class action has been issued three times to class members: June 26, 2003 (Notice of Pendency of Class Action), September 29, 2004 (Notice to All Class Members Who Bought A.T. Cross Stock Between September 17, 1997 and April 22, 1999) and this final Notice of settlement dated July 27, 2005. (Exhibit 1.) Over 8,000 Notices of this settlement were mailed to potential class members.[2]

The Notice advised the members of the Class of the August 26, 2005 deadline for objections to the Settlement and/or Class Counsel's fees and expenses. Not a single class member has filed an objection to the Settlement or the application for fees and expenses. This overwhelmingly favorable response is a strong indication that the Settlement is fair, reasonable and adequate. See Durrett, 896 F.2d at 604; Schwartz v. Novo Industri A/S, 119 F.R.D. 359, 363 (S.D.N.Y. 1988).[3]

---

[2] The PSLRA prescribes the manner in which the terms of a settlement are disclosed to Class Members, and the Notice in the instant case clearly satisfies these requirements. See 15 U.S.C. § 78u-4(a)(7) notice must contain: a description of the recovery, including the amount to be distributed to the class (Notice at 2), a statement on the potential outcome of the case, including disagreement on the amount of damages (Notice at 2); a statement that plaintiffs' counsel intend to apply to the court for an award of attorneys' fees and reimbursement of expenses, as well as the amounts of both that will be sought (Notice at 2); identification of representatives of plaintiffs' counsel to whom inquires may be directed (Notice at 2); the reasons for settlement (Notice at 2); and any other information required by the court.

[3] There was only one opt-out; that was submitted in response to the June 26, 2003 Notice of Pendency (Catherine and Jeanette Aruda, 36 shares in the settlement class period). They were also sent the settlement notice but have not revised their opt-out.

**3. The Complexity and Likely Duration of this Litigation**

This "fairness" factor captures the "prudential policy favoring settlement as a preferred alternative to costly, time-consuming litigation." Mathewson Corp. v. Allied Marine Industries, Inc., 827 F.2d 850, 852 (1st Cir. 1987); see also United States v. DiBiase, 45 F.3d 541, 546 (1st Cir. 1995) ("[S]ettlements reduce excessive litigation expenses and transaction costs."). Approval of the settlement would obviate the need for the trial and avoid further delay in payment to the Class. In re First Commodity Corp of Boston Customer Accounts Litigation, 119 F.R.D. 301 at 314 (D.Mass. 1987).

The uncertainties of litigation are particularly acute in shareholder class actions. Courts have long recognized that "[s]tockholder litigation is notably difficult and unpredictable." Zerkle v. Cleveland-Cliffs Iron Co., 52 F.R.D. 151, 159 (S.D.N.Y. 1971). Given the prospects for a long and arduous trial and appeal process, as well as all of the substantial risks involved in this litigation, settlement at this stage is beneficial to class members. In re First Commodity, 119 F.R.D. at 314. A review of major complex litigation cases underscores the huge risks of litigation. Backman v. Polaroid Corp., 910 F.2d 10 (1st Cir. 1990) (class won jury verdict and motion for judgment notwithstanding the verdict was denied, but on appeal the First Circuit reversed and dismissed the case); Anixter v. Home-Stake Prod. Co., 77 F.3d 1215 (10th Cir. 1996) (Tenth Circuit overturned securities fraud class action jury verdict for plaintiffs, in case filed in 1973 and tried in 1988, on the basis of 1994 Supreme Court opinion).

**4. The Amount of Settlement In Light of the Risks of Litigation**

Recognizing the uncertainty of litigation, courts have held that to justify a proposed settlement, a plaintiff must establish that, all things considered, "it is prudent to eliminate the risks of litigation to achieve specific certainty though admittedly it might be considerably less (or more) than were the case fought to the bitter end." Florida Trailer & Equip. Co. v. Deal, 284 F.2d 567,

573 (5th Cir. 1960). The risks facing Class Plaintiffs, if they did not settle the case, were significant. Had this case gone to trial, there is no assurance that Plaintiffs would have succeeded in establishing liability.

The determination of a reasonable settlement is not a mathematical equation yielding a particularized sum. Rather, "in any case there is a range of reasonableness with respect to a settlement...." Newman v. Stein, 464 F.2d 689 at 693 (2nd Cir. 1972); see also In re Warner Communications Sec. Litig., 618 F. Supp. 735, 745 (S.D.N.Y. 1985), aff'd, 798 F.2d 35 (2d Cir. 1986). Indeed, settlements providing for no monetary damages have been approved by courts. See, e.g., Maher v. Zapata Corp., 714 F.2d 436, 466-67 (5th Cir. 1983).

While Plaintiffs' damage expert, Dr. Scott Hakala, testified that the class' loss was $27 million for the original class period, his report also identified $6 million in damages for the revised, shortened ultimate class period for which this settlement is proposed. The defendants countered Dr. Hakala's report and testimony with the opinion of Dr. Christopher James, who concluded that A.T. Cross's share price fall during the class period generally was unrelated to any disclosures about the Pen Computing Group. Dr. James concluded that there were no damages or, alternatively, concluded that even using Dr. Hakala's "flawed" methodology only yielded $1 million to $6.2 million.)

The defendants also argued in a pending motion in limine that flaws in the damage analysis of Dr. Hakala warranted exclusion of his report under Daubert. Thus, success on damages was far from certain.

In addition defendants raised a loss causation defense. Defendants' loss causation argument was bolstered earlier this year by the Supreme Court's ruling in Dura Pharmaceuticals, Inc. v. Broudo 125 S.Ct. 1627 (U.S. 2005). If successful in attacking damages and loss causation, the case would have been entirely lost.

Class Plaintiffs thus faced a multitude of battles to prosecute this case through trial and the appeals process. In light of the number and nature of the risks inherent in each of these battles, as well as the delay and uncertainty a trial would entail, the $1.5 million Settlement, - - - over 25% of the maximum possible recovery - - - is laudable.

**5. <u>Potentially Significant Obstacles to Recovery</u>**

In order to recover on their claims against the defendants, plaintiffs must prove material misrepresentations or omissions during the Class Period, defendants' scienter, a causal connection between the alleged misstatements or omissions, and damages. It would be necessary to establish scienter either via proof of intentional misconduct or recklessness by the individual defendants or agents of defendant A.T. Cross. Scienter would have been a problem for plaintiffs' case, since the individual defendants denied any knowledge of the existence of the undisclosed PCG sales contracts or any improper accounting for the sales terms in those contracts. Plaintiffs' evidence would also require a jury to understand and consider complex accounting standards and calculations - - an even more daunting task in a case where the Company did not restate its financial statements.

Defendants had filed motions in limine, attacking Plaintiffs' claims in the litigation. While Plaintiffs submitted oppositions to the motions, there could be no guarantee that plaintiffs would prevail. Although Class Counsel believe that plaintiffs could meet their burden and establish that defendants knowingly made material misstatements and omitted material facts during the Class Period, nevertheless, the obstacles to recovery were significant, if Plaintiffs did not settle the case.

**6. Whether Settlement Was After Arms Length <u>Negotiations and the Opinion of Qualified Counsel</u>**

An additional factor for the Court to consider was the arm's-length negotiations by experienced counsel in reaching this Settlement. <u>City P'ship</u>, 100 F.3d at 1043. Courts have examined the "negotiating process by which the settlement was reached," to see whether the

settlement was achieved through "arm's-length negotiations" by counsel who have "the experience and ability . . . necessary to effective representation of the class's interests." Weinberger v. Kendrick, 698 F.2d 61 at 74 (2nd Cir., 1982); see also In re First Commodity, 119 F.R.D. at 311-14. "Indeed, the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." Cotton v. Hinton, 559 F.2d 1326, 1330 (5th Cir. 1977). Both elements -- arm's-length negotiations and experienced counsel -- are present here.

The contentiousness of this litigation has been shown by its length and the regularity of disputes that were decided by the Court. The Court heard and decided nine arguments. The settlement process was no different. When the Court dismissed the case in 2001 there was a mandatory mediation conducted by the First Circuit to see if the case could be resolved before the appellate hearing. Plaintiffs were amenable to pursuing settlement but the defendants would only pay $50,000, at most, to settle the suit.

After discovery had begun, plaintiffs sent a demand letter on January 3, 2003 to defendants' counsel, John Sylvia, to cover all claims for the original class period. Defendants did not respond formally to this settlement demand and declined to counter-offer. After all discovery was complete, plaintiffs sent a letter on May 21, 2004 to suggest that the parties mediate. The parties then hired Thomas Maffei, former President of the Massachusetts Bar Association, as the mediator. The parties met for a mediation session in Boston on July 13, 2004 but remained far from a settlement. At the mediation, counsel for the defendants stressed that plaintiffs' case was likely to be dismissed under their pending summary judgment motion due to scienter and loss causation defenses. Until the Court ruled on summary judgment, however, the parties were far from any agreement. The parties continued telephonic mediation during the following months but without resolution.

The completion of pre-trial preparation in late spring 2005 coupled with the court ordered mediation set for May 24, 2005, served as a catalyst for further settlement discussions. During that mediation session before Magistrate Judge Lovegreen, the parties reached this settlement.

In sum, there was arm's-length bargaining by experienced counsel and the lengthy mediation process that led to the Settlement.

## IV. CONCLUSION

Plaintiffs and their counsel submit that the settlement meets the criteria of fairness, reasonableness and adequacy and therefore the Court should grant approval of the settlement.

Dated: August 30, 2005

Respectfully submitted,

/s/ Matthew F. Medeiros /KAR

Matthew F. Medeiros, Esquire (#1856)
**LITTLE, MEDEIROS, KINDER, BULMAN & WHITNEY, P.C.**
72 Pine Street
Providence, RI 02903
Tel.: (401) 272-8080
Fax: (401) 272-8195
**Liaison Counsel**

**BERGER & MONTAGUE, P.C.**
Lawrence Deutsch, Esquire
Elizabeth W. Fox, Esquire
Shanon J. Carson, Esquire
1622 Locust Street
Philadelphia, PA 19103
Tel.: (215) 875-3062
Fax: (215) 875-4674
**Lead Counsel**

**THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| THOMAS RATCLIFFE, MARK GILONI, JOHN HALEBIAN AND DAVID FIX, Individually and on Behalf of All Others, Similarly Situated,<br>Plaintiffs,<br>vs.<br>A.T. CROSS CO., et al.,<br>Defendants. | : | CIVIL ACTION<br>NO. 00 203 ML |

**DECLARATION OF LAWRENCE DEUTSCH IN SUPPORT OF SETTLEMENT, ATTORNEYS' FEES AND COSTS**

The following is a short summary of the activities of counsel to litigate this case:

## I. PLEADINGS

Plaintiff Michael Aldridge filed his initial complaint on April 21, 2000 and an amended complaint on August 21, 2000. The amended complaint was dismissed with prejudice by the Court on June 4, 2001. The First Circuit reversed the dismissal as to the present defendants on March 20, 2002.

Plaintiffs moved for leave to amend the complaint on January 21, 2003 to add evidentiary detail and Barbara Aldridge as a plaintiff. After briefing and argument on April 2, 2003, the Court refused to allow additional facts and limited the amendment to adding co-plaintiff Barbara Aldridge and records of her purchases.

## II. DISCOVERY

During May 2002, the Plaintiff issued his First Request For Production Of Documents Directed To All Defendants and Plaintiff's First Set Of Interrogatories To All Defendants. In response, ultimately plaintiffs received proforma answers and few documents. Plaintiffs in turn served his initial disclosures Pursuant to Federal Rule of Civil Procedure 26(a)(1) and produced hundreds of pages to defendants. In preparation for discovery, the parties also negotiated a

confidentiality stipulation that the Court entered as an order on May 16, 2002. In addition, the parties negotiated an initial stipulated Pretrial Scheduling Order that the court entered on April 12, 2005.

During merits discovery from January through May 2003, Plaintiffs deposed 11 persons from the defendants and their auditors:

Craig Watchmaker - former Deloitte & Touche Audit Manager
Suzanne Berger - Head of Pen Computing Group Sales
Stephen Wagner - Deloitte & Touche partner
Gary Simpson - A. T. Cross Controller
John Buckley - Chief Operating Officer and Board Member
A.T. Cross - Rule 30(b)(6) deposition
Bradford Boss - Chairman of the Board
John Ruggieri - Chief Financial Officer
Russell Boss - Chief Executive Officer, President and Board Member
Robert Brynes, Jr. - President of Pen Computing Group
David Arthur - Prior head of Pen Computing Group

Plaintiff issued 33 subpoenas for documents to third parties who were PCG customers, PCG consultants, A.T. Cross auditors and stock market professionals for documents during 2002 and followed up each with phone calls and letters.

## III. RESOLUTION OF DISCOVERY DISPUTES

There were numerous discovery disputes during the case. Most were resolved via letters, discussions and negotiation between the parties, however, certain disputes required Court resolution. In September 2002, Plaintiff's moved to compel the Defendants to produce documents. In a December 2002 ruling by Magistrate Judge Martin, Defendants were ordered to produce a number of documents. Secondly, Plaintiffs moved to compel IBM Inc. to produce subpoenaed documents. Prior to the scheduled argument, IBM agreed to produce certain documents. Third, Plaintiffs moved in January 2003 to compel A.T. Cross's auditor Deloitte & Touche, to produce subpoenaed documents. On May 6, 2003 the Court granted in part and denied in part Plaintiffs' motion. However, the Court required a specific confidentiality stipulation be negotiated for Deloitte &

Touche's highly confidential documents. Fourth, Plaintiff moved on February 24, 2003 to take more than the minimum of ten depositions. The court granted Plaintiffs' motion in part so that Plaintiff could take one additional deposition.

## IV. CLASS CERTIFICATION

Plaintiff filed a Motion for Class Certification in May 2002. During August 2002 Plaintiff issued his Response to A.T. Cross's First Set of Document Request to Lead Plaintiff and Plaintiff served Objections to A.T. Cross's First Set of Document Requests to Lead Plaintiff. After full class discovery, the parties briefed the class issues. While waiting for a ruling on class, defendants moved for an expedited stay of discovery pending resolution of class certification. The expedited motion to stay discovery was heard on December 19, 2002 and denied by Magistrate Martin. At the argument on class certification, the Court certified the Class but ordered that Barbara Aldridge must be added as a class plaintiff. Mrs. Aldridge then responded to document requests and was deposed.

After the Court ruled on Defendants' summary judgment motion in July 2004 and narrowed the class period, the Court allowed plaintiffs to provide notice to the class to seek substitute plaintiffs after briefing. Plaintiffs moved for substitution of five new class representatives who had volunteered to appear as representatives as a result of notice. Defendants then moved to compel discovery of the proposed substitute class representatives. After briefing and argument on December 13, 2004, the Court granted Defendants' motion to compel discovery. Then four of the new plaintiffs produced documents and were deposed. At the end of this third wave of class discovery, defendants agreed not to oppose these four new class representatives. The Court then granted Plaintiffs' motion to substitute Thomas Ratcliffe, John Halebian, David Fix and Mark H. Giloni as the new class representatives.

## V. EXPERT DISCOVERY

Expert reports were served on defendants from Dr. Scott D. Hakala (damages), Robert L. Klein (marketing), and Harris L. Devor (forensic accounting) in June 2003. All experts were deposed in the summer of 2003, including defendants' damage expert, Dr. Christopher James. (Defendants refused to pay for the deposition time of plaintiffs' experts so plaintiffs moved to compel the defendants to pay mandated costs for discovery. After briefing and one day before a hearing, the parties settled on an amount the defendants would pay for plaintiffs' experts' time.)

## VI. SUMMARY JUDGMENT

On August 28, 2003, the Cross Defendants filed a motion for summary judgment. Plaintiffs responded with their brief. In December 2003, the Defendants filed a motion to strike Plaintiffs' Statement of Contested Issues of Material Fact. In response, plaintiffs opposed Defendants' Motion to Strike and plaintiffs moved for leave to file the Rule 26 Expert Reports of Harris Devor and Robert Klein. The summary judgment motion and related motions were argued on January 8, 2004. Following the Court's July 21, 2004 ruling on summary judgment, plaintiffs moved for partial reconsideration of the Court's order. The Court denied this motion on August 18, 2004.

Defendants filed a supplemental motion for summary judgment on August 8, 2004. After briefing, on September 9 2004, the Court denied Defendants' motion and allowed plaintiffs to move for the appointment of substitute class representatives.

## VII. PRE-TRIAL PREPARATION AND SUBMISSIONS:

Beginning in 2003, in anticipation of trial, plaintiffs submitted 21 draft declarations of self-authentication under federal Rules of Evidence 803(6) and 902 (11) to various third parties that had produced documents in order to authenticate documents for trial.

The parties made extensive pretrial submissions on May 2, 2005 in response to the Court's May 16, 2002 Order. The Defendants also moved to exclude the expert testimony of Dr. Hakala.

The Defendants' separately moved to exclude documents and testimony at trial covering pre-class discovery. Plaintiffs responded to each of these motions.

## VIII. NEGOTIATIONS FOR SETTLEMENT

When the case was dismissed by the District Court in 2001 there was a mandatory mediation conducted by the First Circuit to see if the case could be resolved prior to the appellate hearing. Plaintiffs were amenable to pursuing settlement but the defendants would only pay a nominal amount, if anything, to settle the suit.

After discovery had begun, plaintiffs sent a demand letter on January 3, 2003 to defendants' counsel, John Sylvia, to cover all claims for the original class period. Defendants did not respond formally to this settlement demand and declined to counter-offer. After all discovery was complete, plaintiffs sent a letter on May 21, 2004 to suggest that the parties mediate. The parties then hired Thomas Maffei, former President of the Massachusetts Bar Association, as the mediator. The Parties met for a mediation session in Boston on July 13, 2004 but remained far apart. At the mediation, counsel for the defendants stressed that plaintiffs' case was likely to be dismissed under their pending summary judgment motion due to scienter and loss causation defenses. Therefore, until the Court ruled on summary judgment, the parties could not come to a resolution although they continued telephonic mediation.

The completion of pre-trial preparation in late spring 2005, coupled with the court ordered mediation set for May 24, 2005, served as a catalyst for further settlement discussions. During the mediation session before Magistrate Judge Lovegreen, the parties reached this settlement.

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed this 29th day of August, 2005 at Philadelphia, Pennsylvania.

Lawrence Deutsch